KEVIN VICK, Cal Bar No. 220738
  kvick@jassyvick.com
MEGHAN FENZEL, Cal Bar No. 324139
  mfenzel@jassyvick.com
**JASSY VICK CAROLAN LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone:  310-870-7048
Facsimile:   310-870-7010

Attorneys for Nonparty Movant
STRANGE BREW STRATEGIES

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STRANGE BREW STRATEGIES, LLC<br><br>　　　　Movant,<br><br>vs.<br><br>RYDER RIPPS and JEREMY CAHEN,<br><br>　　　　Respondent.<br><br>YUGA LABS, Inc.<br><br>　　　　Plaintiff,<br><br>vs.<br><br>RYDER RIPPS and JEREMY CAHEN,<br><br>　　　　Defendants. | Case No. 3:23-mc-80072<br><br>**STRANGE BREW STRATEGIES' NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND MOTION FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Related to Case No. 2:22-cv-4355-JFW-JEM (C.D. Cal. filed June 24, 2022)]<br><br>Date:   TBD<br>Time:   TBD<br>Crtrm:  TBD<br>Judge:  TBD |

TO THE HONORABLE COURT AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 17, 2023 at ____, or as soon thereafter as counsel may be heard in person or via videoconference or teleconference, as the Court may allow, Strange Brew Strategies, LLC ("SBS") will and does move the Court for a protective order and an order quashing the subpoenas served by Ryder Ripps and Jeremy Cahen, Defendants in the trademark infringement case *Yuga Labs, Inc. v. Ryder Ripps et al.*, No. 2:22-cv-4355-JFW-JEM, pending in the United States District Court for the Central District of California.  SBS brings this motion pursuant to Federal Rules of Civil Procedure 45(d) and 26(c), as SBS is not a party to the *Yuga Labs* litigation, but rather a non-party on whom Ripps and Cahen served discovery subpoenas.

SBS respectfully suggests that exceptional circumstances merit transfer to the Central District of California pursuant to Federal Rules of Civil Procedure 45(f).  The District Court and the Magistrate Judge hearing discovery matters in the *Yuga Labs* litigation have familiarity with the parties, factual background, and legal issues in the case, and have heard and are scheduled to hear pending motions addressing related subjects.  Thus, transfer would be more efficient and would preserve judicial resources.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, and the accompanying Declarations and Exhibits.  This Motion follows an effort to confer with counsel for the Defendants, which did not result in a resolution of the matter.

DATED:      March 13, 2023                    **JASSY VICK CAROLAN LLP**


/s/ Meghan Fenzel
    MEGHAN FENZEL
Counsel for Nonparty Movant
STRANGE BREW STRATEGIES

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..............................................................................................................1

II. BACKGROUND ................................................................................................................2

    A.    Factual Background................................................................................................2

    B.    The Underlying Action: *Yuga Labs, Inc. v. Ripps et al.* ......................................3

    C.    Defendants' Subpoenas to SBS ...............................................................................4

III. THE RESOLUTION OF THE PARTIES' ONGOING DISPUTES MUST INFORM THIS NONPARTY DISCOVERY. ...............................................................6

IV. DEFENDANTS' MOTION TO STAY FURTHER SUPPORTS AWAITING THE COURT'S RULING. .................................................................................................7

V. ANY DISCOVERY OF SBS SHOULD BE LIMITED TO VIABLE CLAIMS. ...........................................................................................................................8

VI. THERE IS NO REASONABLE BASIS FOR AN SBS DEPOSITION .......................9

VII. EXCEPTIONAL CIRCUMSTANCES MERIT TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA ...................................................................10

VIII. CONCLUSION AND SUMMARY OF REQUESTED RELIEF. ..............................10

**I.   INTRODUCTION**

This motion relates to subpoenas served on public relations firm Strange Brew Strategies ("SBS") in a trademark infringement case pending in the Central District of California to which SBS is not a party: *Yuga Labs, Inc. v. Ryder Ripps et al.*, No. 2:22-cv-4355-JFW-JEM.  Defendants in that lawsuit, Ryder Ripps and Jeremy Cahen, issued the subpoenas to SBS asserting that discovery was relevant to their counterclaims.  Declaration of Meghan Fenzel ¶¶ 2, 6, Exs. 1, 2. SBS asks this Court for a protective order (1) suspending the deposition subpoena, (2) pausing enforcement of Defendants' document subpoena to SBS until the court resolves the scope of discovery on counterclaims and, (3) if the court grants Yuga Labs' anti-SLAPP motion striking the counterclaims, an order quashing Defendants' document subpoena.  Fed. R. Civ. P 26(c), 45(d).

Such orders are proper because there are several pending disputes between the parties in the *Yuga Labs* case—including Defendants' own motion to stay the entire case—that should be resolved before nonparty SBS is forced to shoulder the burdens associated with responding to subpoenas that may prove wholly unnecessary, depending on how the Central District resolves the pending party disputes.  Defendants argue in their motion to stay that proceedings must be stayed to avoid inefficiencies and disproportionate burdens, which is hard to square with their insistence that nonparty SBS produces documents immediately.  Fenzel Decl. ¶¶ 18, 19, 21.  Meanwhile, the District Court has taken under submission Yuga Labs' fully briefed motion to dismiss and anti-SLAPP motion seeking to strike Defendants' counterclaims. *See Yuga Labs, Inc. v. Ryder Ripps et al.*, No. 2:22-cv-4355-JFW-JEM, Dkt. 89 (C.D. Cal. filed Jan. 18, 2023); *see also id.* Dkt. 117; Fed. R. Evid. 201.[1]  If either of those motions is granted, discovery from SBS related to Defendants' counterclaims will be irrelevant and wholly unnecessary.

Despite all this, Defendants insist that SBS produce documents now in response to the subpoena.  While SBS initially expressed its willingness to do so if a compromise could be reached

---

[1] SBS requests judicial notice of fact of the docket entries and dates on the docket for *Yuga Labs, Inc. v. Ryder Ripps et al.*, No. 2:22-cv-4355-JFW-JEM (C.D. Cal. filed June 23, 2022) pursuant to Federal Rule of Evidence 201.  For the court's review of relevant substance, the accompanying Declaration of Meghan Fenzel quotes and attaches the most pertinent filings.

with Defendants regarding the scope of production, SBS's willingness was based on Defendants' assurances that party discovery on Defendants' counterclaims was ongoing with Yuga Labs. Fenzel Decl. ¶ 13. But that turned out to be false. *See id* ¶¶ 13, 21. Ruling on Defendants' motion to compel discovery on counterclaims from Yuga Labs, Magistrate Judge McDermott ruled that it was "premature" to rule on whether the discovery Defendants sought was relevant to counterclaims "until the District Court rules on the viability of those counterclaims." *See id*. ¶ 9, Ex. 5 at 2. In a separate discovery motion, now pending, Yuga Labs has taken the position that Judge McDermott's order pauses all document discovery on the counterclaims. *See id*. ¶¶ 17, 22, 24. As a nonparty, SBS faces a disproportionate and undue burden to produce discovery where the parties have not.

Finally, because the many pending motions directly relate to the relief SBS seeks here, exceptional circumstances warrant transfer to the Central District of California. Fed. R. Civ. P. 45(f). The District Court and the Magistrate Judge hearing discovery matters in the *Yuga Labs* litigation have familiarity with the parties, factual background, and legal issues in the case, and have heard and are scheduled to hear pending motions addressing related subjects. Thus, transfer would be more efficient and would preserve judicial resources.

## II.   BACKGROUND

### A. Factual Background

Strange Brew Strategies ("SBS") is a small public relations firm that represented Yuga Labs, the company behind the famous Bored Ape Yacht Club ("BAYC") non-fungible token ("NFT") collection.[2] O'Brien Decl. ¶¶ 2, 4. SBS began working with Yuga Labs in early 2022, nearly a year after BAYC's launch, by which time BAYC had already attracted significant attention. *Id*. ¶ 4. In 2021, "Conceptual artists" Ryder Ripps and Jeremy Cahen had launched what they referred to as a "satirical NFT collection," RR/BAYC, which sold distinct NFTs using the exact same images from BAYC, garnering Ripps and Cahen more than $5 million, according to Yuga Labs' complaint in its trademark infringement complaint. *Id*. ¶ 6. Ripps and Cahen also repeatedly criticized Yuga Labs

---

[2] Launched in April 2021, each BAYC NFT features a unique profile picture of a cartoon ape with different characteristics. Purchase of a BAYC NFT—which can be in the hundreds of thousands to millions of dollars—also grants entry an exclusive community. *See Yuga Labs v. Ripps,* Dkt. 1 ¶ 1.

on social media from about November 2021 onward.  *Id.*  As is typical of a public relations firm, SBS worked with Yuga Labs to secure positive press coverage, develop communications strategies, and respond to media inquiries about the company's various projects.  *Id.* ¶ 5.  Part of SBS's role as Yuga Labs' PR firm was responding to journalist's inquiries about the trademark lawsuit and Defendants' criticisms of BAYC—including accusations that BAYC was racist, which Yuga Labs denied as baseless.  *Id.* ¶ 6.  Eventually, Yuga Labs hired the SBS staffer who had been managing their client file, and Yuga Labs' contract with SBS ended.  *Id.* ¶¶ 4, 7.

### B. The Underlying Action: *Yuga Labs, Inc. v. Ripps et al.*

In June 2022, Yuga Labs brought a lawsuit in the Central District of California against Ryder Ripps and Jeremy Cahen for trademark infringement for the RR/BAYC project.  *See Yuga Labs v. Ripps*, Dkt. 1.  Defendants filed an anti-SLAPP motion seeking to strike the Complaint, arguing that Yuga Labs' trademark lawsuit sought to silence Ripps and Cahen's critique and that their "satirical" NFT collection, RR/BAYC, was protected speech.  *See Yuga Labs v. Ripps*, Dkt. 48; *see also* Fenzel Decl. ¶ 3.  Judge Walter denied Defendants' motion on December 16, 2022, holding that Defendants failed to demonstrate that Plaintiff's trademark claims arose from protected speech and thus failed to meet the requirements of California's anti-SLAPP statute.  *See Yuga Labs v. Ripps*, Dkt. 62; Fenzel Decl. ¶ 3.  Defendants appealed the order on their anti-SLAPP motion five days later but did not move to stay proceedings at that point.  *See Yuga Labs v. Ripps*, Dkt. 63.

Instead, on December 27, 2022, Defendants filed their answer and also added counterclaims seeking declaratory relief and claiming intentional and negligent infliction of emotional distress against Yuga Labs for "retaliating" and attempting to silence Ripps and Cahen's for accusing BAYC of racism.  *See Yuga Labs v. Ripps*, Dkt. 65; Fenzel Decl. ¶ 6.  This alleged retaliation and media response to Ripps and Cahen from Yuga Labs is the basis for the subpoenas to SBS, Yuga Labs' PR firm.  In response to the counterclaims, Yuga Labs brought their own motion to dismiss and anti-SLAPP motion.  *See Yuga Labs v. Ripps*, Dkt. 89.  Those motions are fully briefed and currently under submission.  *See Yuga Labs v. Ripps*, Dkt. 117.

Meanwhile, the parties filed several discovery motions.  *See Yuga Labs v. Ripps*, Dkts. 67, 69, 75, 98, 103, 108, 109, 121.  On January 17, 2023, Magistrate Judge McDermott withheld ruling

on Defendants' motion to compel production of documents from Yuga Labs on the counterclaims "until the District Court rules on the viability of those counterclaims." *See id.* Dkt. 87; Fenzel Decl. ¶ 9, Ex. 5 at 2. In that order, Judge McDermott noted the parallels between Defendants' counterclaims and their legal theories that the District Court had previously rejected in its December 16, 2022 ruling denying Defendants' anti-SLAPP motion. *See id.* at 1–2. Opposing a subsequent motion to compel in February, Yuga Labs argued that Defendants were once again improperly seeking to compel discovery on counterclaims, contrary to Judge McDermott's order. *See Yuga Labs v. Ripps*, Dkt. 103-1, 103-9, 103-14; Fenzel Decl. ¶ 17. Defendants argued that the February motion to compel was instead related to an unclean hands defense. *See id.*

On February 23, 2023, Defendants moved to stay proceedings pending their appeal of the court's December 16, 2022 order on their anti-SLAPP motion. *See Yuga Labs v. Ripps*, Dkt. 118. In that motion, Defendants argued "Allowing the case to proceed as currently scheduled will accordingly produce significant inefficiencies that disproportionately burden Defendants." *Id.* at 1. The motion did not acknowledge the seeming contradiction of Defendants' position in light of their pressure on nonparty SBS and their several motions to compel discovery from Yuga Labs.[3] *See id.*

### C. Defendants' Subpoenas to SBS

In December 2022, SBS received a document subpoena and deposition subpoena from Defendants, who subsequently alerted SBS that Defendants' counterclaims would, "inform the scope of production for Strange Brew Strategy's [*sic*] subpoena." Fenzel Decl. ¶ 6, Ex. 2. SBS served objections and responses on January 13, 2023. *Id.* ¶¶ 4, 7, 8, Exs. 2–4. Following Judge McDermott's January 17, 2023 order and Yuga Labs' filing of their anti-SLAPP motion seeking to strike Defendants' counterclaims, SBS contacted Defendants to inquire if the subpoena to SBS was withdrawn in light of the developments in the case. *Id.* ¶¶ 10, 11, Ex. 6. Defendants declined to withdraw it and convened a conference for January 20, 2023.

---

[3] SBS is aware of at least one other nonparty Defendants have pressured to provide immediate discovery in this trademark lawsuit: late night talk show host Jimmy Fallon. *See In Re Document Subpoena Directed to Nonparty James Fallon*, No. 1:23-mc-00059 (S.D.N.Y. filed Mar. 6, 2023).

The January 20, 2023 conference led to an initial compromise between SBS and Defendants that narrowed the scope of production and took the deposition of SBS off calendar. Fenzel Decl. ¶ 12. But SBS only agreed to the compromise based on Defendants' representations regarding two core premises: (1) SBS would only be expected to produce documents related to ongoing discovery, and (2) Yuga Labs, as the plaintiff, was producing relevant documents in their possession. *Id.* ¶¶ 12, 14. Based on those representations, SBS agreed that by the end of February, it would produce documents related to the Defendants and their IIED and NIED claims that were not already in the possession, custody, or control of the parties — e.g., any communications to which Plaintiff Yuga Labs was a party were to be obtained from Yuga Labs, not from SBS. *Id.* ¶ 13. During that call, SBS confirmed that Defendants were aware that SBS did no trademark work and the SBS staffer who had managed the Yuga Labs file had left SBS and gone in-house to Yuga Labs. *Id.* ¶ 15; O'Brien Decl. ¶ 3. Defendants proffered that they sought to minimize the burden on SBS as a small nonparty. *See* Fenzel Decl. ¶ 20, Ex. 7.

Subsequent filings and communications by the parties revealed that the premises of SBS's compromise with Defendants were not accurate. First, Yuga Labs' responses in the joint stipulation accompanying Defendants' motion to compel reflected that, contrary to Defendants' representations, Yuga Labs had *not* agreed to ongoing discovery regarding issues raised by the counterclaims. To the contrary, pursuant to Judge McDermott's January 17, 2023 order, Yuga Labs was waiting to produce such documents until the District Court had ruled on Yuga Labs' pending motion to dismiss and anti-SLAPP motion seeking dismissal of the counterclaims. Fenzel Decl. ¶ 17.

Second, Defendants filed a notice indicating their intent to move to *stay all proceedings* pending the appeal of the court's December 16, 2023 order denying their special motion to strike the Complaint pursuant to the anti-SLAPP statute. *Id.* ¶ 18.

Taking Defendants' motion to stay as an indication that they did not intend to continue imposing discovery burdens on a nonparty, SBS reached out via email to inquire if they should stand down, but Defendants refused Fenzel Decl. ¶ 19. Instead, Defendants claimed, "there has been ongoing discovery on counterclaims in this case since as early as January 1." *Id.* ¶ 20, Ex. 7.

However, Yuga Labs responded on the same email thread and directly contradicted Defendants' claim. Yuga Labs stated:

> "We disagree with your mischaracterization as to the current state of discovery. As you know, the parties currently dispute whether a number of Defendants' discovery requests in the motion to compel impermissibly call for documents related to Inflammatory Material and Defendants' counterclaims (both of which are precluded by the Court's January 17 Order)."

Yuga Labs further noted, "Given that these issues are currently pending before the Court (or the court has already ruled are not proper discovery), it is improper to require a non-party to produce such documents." Fenzel Decl. ¶ 22, Ex. 7. Defendants responded that SBS must either produce documents or move to quash the subpoena. *Id.* ¶ 23, Ex. 7.

SBS followed up with a formal letter requesting a conference and conferred with Defendants on March 3, 2023. Fenzel Decl. ¶¶ 24–26. SBS requested that Defendants pause enforcement of the subpoenas pending resolution of the disputes between the parties on the scope of discovery and viability of counterclaims. *Id.* ¶ 24. Defendants indicated that they would only pause enforcement of the subpoena if the court granted their stay immediately—before a ruling on this present SBS motion to quash and for protective order. *Id.* ¶ 25. They would not agree to withdraw the subpoena if Plaintiff Yuga Labs prevailed on its motion dismissing and/or striking Defendants' counterclaims, despite Defendants' earlier representations that the subpoena was linked to the counterclaims. *Id.* ¶ 6, 26, Ex. 2. This motion followed.

### III. THE RESOLUTION OF THE PARTIES' ONGOING DISPUTES MUST INFORM THIS NONPARTY DISCOVERY.

Nonparty SBS only agreed to produce discovery in line with ongoing party discovery, yet SBS later learned that, in fact, the parties vigorously dispute the proper scope of discovery. Judge McDermott's Order is clear that it would not compel discovery on counterclaims until the District Court ruled on their viability, but the parties have interpreted the effect of that Order differently. *See* Fenzel Decl. ¶ 9, Ex. 5. SBS understands Defendants' position that discovery for their defenses and counterclaims is ongoing. *See id.* ¶¶ 20, 35, Exs. 7, 9. But SBS also understands that Yuga Labs disagrees. *See id.* ¶ 22, Ex. 7. The parties' disagreement remains unresolved.

1   Defendants are now asking SBS to produce documents *beyond* what either party has
2   produced, circumventing ongoing party disputes.  When asked to identify relevant documents that
3   have been produced, Defendants could not identify any documents relating to SBS.  *See* Fenzel
4   Decl. ¶ 25, Ex. 9.  This is true despite all parties acknowledging that Yuga Labs possesses the
5   majority of SBS's client file related to Yuga Labs.  *See* O'Brien Decl. ¶ 8; Fenzel Decl. ¶¶ 12, 13.
6   Defendants' insistence on pursuing discovery from SBS when the court has blocked it from
7   compelling Yuga Labs is unfair, inefficient, and places an undue burden on SBS as a nonparty.  *See*
8   Fed. R. Civ. P. 45(d).

9   SBS is left to question whether the subpoena was issued for purposes of harassment, because
10  there are other viable means to obtain the same evidence— i.e., from the parties' themselves—and
11  it is currently unclear whether the information sought is relevant, nonprivileged, and crucial to the
12  Defendants' case.  *See Green v. Baca*, No. CV 02-204744MMMMANX, 2005 WL 283361, at *4
13  (C.D. Cal. Jan. 31, 2005) (citing *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir.
14  2003)).  Good cause exists for the court to exercise its "broad latitude" and issue a protective order
15  here. *Williams v. Cnty. of San Diego*, No. 17-CV-00815-MMA-JLB, 2019 WL 5963969, at *4
16  (S.D. Cal. Nov. 13, 2019).

17  Because Defendants have refused to await the court's rulings on party disputes, SBS must
18  now ask the Court for an order that suspends the subpoena to SBS pending rulings defining
19  surviving claims and the scope of discovery.  SBS further requests that the Court issue an order (1)
20  quashing the subpoena if the District Court dismisses Defendants' counterclaims or (2) provides
21  guidelines to SBS on what discovery is proper if the counterclaims survive.

22  **IV.  DEFENDANTS' MOTION TO STAY FURTHER SUPPORTS AWAITING THE**
23  **COURT'S RULING.**

24  Defendants' February 23, 2023 motion to stay proceedings pending their appeal contradicts
25  their insistence that SBS produce documents immediately.  *See* Fenzel Decl. ¶¶ 18, 19, 21.  As
26  Defendants themselves have asserted in their motion to stay filings, ongoing discovery would
27  "produce significant inefficiencies" and impose disproportionate burdens on them.  *See id.*  Yet in
28  that filing, Defendants did not reveal to the court that they are continuing to press *non*party SBS to

1  go to the time and expense of further responding to discovery that the parties themselves are not
2  pursuing.  *See id.*  It is unduly burdensome and disproportionate for Defendants to insist on
3  immediate production from a *non*party while simultaneously pursuing a stay to spare Defendants
4  from similar burdens.  Fed. R. Civ. P. 45(d), 26(c).

5  **V.    ANY DISCOVERY OF SBS SHOULD BE LIMITED TO VIABLE CLAIMS.**

6  "Any information sought by means of a subpoena must be relevant to the claims and
7  defenses in the underlying case," yet Defendants recast the same legal theories in different ways to
8  argue that SBS must produce discovery no matter how the court rules on their claims.  *See* Fed. R.
9  Civ. P. 26(b)(1), (c); *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006).  Judge Walter
10 rejected certain legal theories in his December 16 order denying Defendants' motion to strike Yuga
11 Labs' Complaint, so Defendants filed counterclaims and represented that those counterclaims
12 should "inform the scope of production" by SBS to Defendants' subpoena.  Fenzel Decl. ¶¶ 3, 6,
13 Ex. 2.  Later, Judge McDermott recognized Defendants' counterclaims as a "backdoor" to get
14 around Judge Walter's rejection of Defendants' same theories and withheld ruling on discovery
15 disputes until the District Court ruled on whether the counterclaims should be stricken.  *See id.* ¶ 9,
16 Ex. 5 at 2.  But in the meet and confer preceding this motion, Defendants indicated that even if the
17 district court granted Yuga Labs' motion to dismiss and anti-SLAPP motion, disposing of all
18 Defendants' counterclaims, Defendants *still* would not suspend subpoenas to SBS.  *See id.* ¶¶ 26,
19 27, Ex. 10.  Instead, they would want to meet and confer a third time.

20 Defendants have represented to SBS since December 28 that this discovery—SBS's
21 communications with the media in 2022 regarding the Defendants and their criticism of Yuga
22 Labs—relates to their IIED and NIED counterclaims.  But now, they will not concede that
23 discovery would be unnecessary if those claims are stricken.  "Where the information sought is not
24 relevant to a claim or defense 'then any burden whatsoever imposed would be by definition
25 'undue.'"  *Unsworth v. Musk*, No. 19-MC-80224-JSC, 2019 WL 5550060, at *6 (N.D. Cal. Oct.
26 28, 2019) (quoting *Compaq Comput. Corp. v. Packard Bell Elecs., Inc.*, 163 F.R.D. 329, 335 (N.D.
27 Cal. 1995)).  With no counterclaims, the communications that Defendants seek from SBS regarding
28 Yuga Labs' media response to Defendants would be irrelevant.  SBS is otherwise tangential to a

trademark dispute regarding BAYC and RR/BAYC. SBS does not and did not provide design or trademark services, and they only represented Yuga Labs from March 2022 through January 2023, starting after the launch of both BAYC and RR/BAYC. O'Brien Decl. ¶¶ 3, 4, 6.

SBS thus requests a protective order preventing an SBS deposition and order quashing Defendants' document subpoena should the court dismiss or strike the IIED and NIED counterclaims. Fed. R. Civ. P. 26(c), 45(d). Courts may issue orders quashing subpoenas, protective orders preventing discovery irrelevant to any claims at issue, and protective orders preventing unnecessary depositions. *See, e.g., V5 Techs. v. Switch, Ltd.*, No. 2: 17-cv-02349-KJD-NJK, 2019 WL 7489108, at *5 n.9 (D. Nev. Dec. 20 20, 2019) ("[C]ourts may enter protective orders preventing irrelevant questioning at deposition ."); *Nguyen v. LVNV Funding, LLC*, No. 15-cv-758-LAB, 2017 WL 951026, at* 11 (S.D. Cal. Mar. 10, 22 2017) (declining to compel deposition testimony that was irrelevant and instead issuing a protective order); *United States v. Capriotti*, No. 1:11-cv-0847 DLB, 2012 WL 2994244, at *2 (E.D. Cal. July 20, 2012) (finding "good cause" for a protective order when "the proposed subject matter of the depositions is irrelevant to [the] proceeding").

If the court rules that the Defendants' counterclaims are viable and the case proceeds, SBS is willing to produce documents consistent with the compromise that SBS and Defendants previously discussed: limited to relevant, unprivileged SBS documents about Defendants not already in the parties' possession. It is already duplicative to seek nonparty discovery for the bulk of related documents, with the exception of a few direct communications between SBS and journalists. Plaintiff Yuga Labs possesses much of its own PR file, and they hired the SBS staffer managing their communications. O'Brien Decl. ¶¶ 7, 8.

### VI. THERE IS NO REASONABLE BASIS FOR AN SBS DEPOSITION

Defendants have agreed to take the SBS deposition off calendar for now but remain coy about attempting to enforce it in the future. No matter the District Court's ruling on the counterclaims, a nonparty SBS deposition would be unnecessary and unduly burdensome. The SBS staffer most knowledgeable about Yuga Labs and Defendants left SBS to work for Plaintiff Yuga Labs in September 2022, so testimony could be obtained from a more convenient, less burdensome

source: Plaintiff. Fed. R. Civ. P. 26(b)(2)(c)(i). SBS thus seeks a protective order regarding the deposition.

## VII.     EXCEPTIONAL CIRCUMSTANCES MERIT TRANSFER TO THE CENTRAL DISTRICT OF CALIFORNIA

Because this motion requests relief linked to forthcoming rulings from Judge Walter and Magistrate Judge McDermott in the underlying action in the Central District of California, there are exceptional circumstances that warrant transfer Federal Rule of Civil Procedure 45(f). SBS has been compelled to seek relief from the Court due to the Parties' many pending motions and opposing positions on similar issues in the underlying action. Judge Walter and Magistrate Judge McDermott have familiarity with the parties, factual background, and legal issues in the case, and have heard and are scheduled to hear pending motions addressing related subjects. Thus, transfer would be more efficient and would preserve judicial resources. Transfer also would be warranted to avoid any disruption to Judge Walter's management of the case.

## VIII.    CONCLUSION AND SUMMARY OF REQUESTED RELIEF.

For the foregoing reasons, SBS respectfully requests that the Court issue a protective order (1) suspending the deposition subpoena, (2) pausing enforcement of Defendants' document subpoena to SBS until the court resolves the scope of discovery on counterclaims and, (3) if the court grants Yuga Labs' anti-SLAPP motion striking the counterclaims, an order quashing Defendants' document subpoena. To the extent the court denies Yuga Labs' motion on the counterclaims, SBS seeks an order modifying the document subpoena cabined to issues relevant to Defendants' viable claims or defenses.

DATED:  March 13, 2023                     JASSY VICK CAROLAN LLP

/s/ Meghan Fenzel
MEGHAN FENZEL
Counsel for Nonparty Movant
STRANGE BREW STRATEGIES